IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JOSIAH HALL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civ. No. MJM-23-02885 |
| v. | * | |
| | * | |
| STATE EMPLOYEES CREDIT UNION OF MARYLAND, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \*

## MEMORANDUM

Currently pending before the Court are defendant State Employees Credit Union of Maryland's ("Defendant" or "SECU") Motion to Compel Arbitration and Stay Case, ECF No. 8; self-represented plaintiff Josiah Hall's ("Plaintiff") Motion for Summary Judgment, ECF No. 11; and Plaintiff's Motion for Leave to File Surreply, ECF No. 18. The motions are fully briefed and ripe for disposition. No hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant Defendant's Motion to Compel Arbitration and Stay Case and deny Plaintiff's Motion for Summary Judgment.

I. BACKGROUND

Plaintiff applied for a membership account with SECU on or about November 19, 2019. ECF No. 8-2 (Affidavit of Brent Shank) ¶ 6; ECF No. 8-3 (account application). At the time Plaintiff submitted his original application for a membership account, he was provided with and

1

agreed to SECU's Membership and Account Agreement (the "Membership Agreement").[1] ECF No. 8-2, ¶ 7; ECF No. 8-4 (Membership Agreement) at 5–22. The Membership Agreement contains an arbitration agreement. ECF No. 8-4 at 13. The arbitration agreement states that both parties "agree to attempt to informally settle any disputes arising out of, affecting, or relating to [Plaintiff's] accounts or [his] relationship with [SECU]," and that either party "may elect to resolve a particular Claim through arbitration, even if one of [the parties] has already initiated litigation related to the Claim." *Id.* The arbitration agreement further provides SECU members with an opportunity to opt-out of the agreement by notifying SECU in writing within 60 days of receiving it. *Id.* at 14. The provision states that if there is no opt-out within 60 days, the member will "be deemed to have provided [his] consent to the resolution of [his] Claims through binding arbitration." *Id.* There is no evidence that Plaintiff submitted written notice to SECU electing to opt-out of the arbitration agreement. ECF No. 8-2, ¶ 10.

In May 2020, Plaintiff was approved for a credit card and received a loan in the amount of $7,500 from SECU. *Id.* ¶¶ 12–13. Plaintiff became delinquent on both the credit card and the loan, owing a principal amount of $7,480.37 on the loan by September 2022. *Id.* ¶ 15. Plaintiff alleges that he applied for a credit card with an unnamed financial institution on July 6, 2022, and was "flatly denied" due to his credit report. ECF No. 1, ¶ 7. He further alleges that two of his SECU accounts had "grossly inflated" balances on a credit report he obtained from TransUnion. *Id.* ¶ 8.

On February 1, 2023, Plaintiff sent a letter to TransUnion disputing the accuracy of the information from his consumer report, requesting information regarding the procedures TransUnion used to evaluate the accuracy of the disputed SECU accounts, and requesting deletion

---

[1] The Membership Agreement covers "anyone who signs an Account Application or . . . other account opening documents." ECF No. 8-4 at 5. Plaintiff signed an Account Application on November 19, 2019, and thereafter opened and used an account with SECU. *See* ECF No. 8-3 at 2.

2

of the allegedly erroneous information. *Id.* Plaintiff received the results of TransUnion's reinvestigation on March 25, 2023, and all disputed accounts had been marked as verified. *Id.* Plaintiff alleges that SECU failed to conduct a reasonable reinvestigation and failed to update the erroneous accounts on its end. *Id.* ¶¶ 8–9. Plaintiff's allegations regarding SECU's actions include: omissions of historical information, the accounts not being properly marked as disputed, balances that did not reflect payments he had made, and an overall erroneous portrayal of his credit. *Id.* ¶ 8. In February 2023, Plaintiff initiated arbitration with the American Arbitration Association ("AAA") regarding his loan with SECU but eventually dismissed that action. ECF No. 8-2, ¶¶ 16–18.

Plaintiff filed the instant action against SECU in October 2023, alleging that SECU failed to adhere to reasonable standards in its reinvestigation and that SECU has shown a "pattern of negligence and reckless disregard for Plaintiff's rights and accurate reporting," in violation of the Fair Credit Reporting Act ("FCRA"). ECF No. 1, ¶¶ 8–15. Plaintiff further asserts that he "endured significant harm" due to SECU's actions, including mental and emotional distress, credit reputation damage, credit denial, and high interest rates. *Id.* Separately, SECU filed suit against Plaintiff in the District Court of Maryland for Harford County and, on May 3, 2024, obtained a judgment against Plaintiff for the delinquent loan balance of $10,116.68.[2] ECF No. 8-2, ¶ 18.

After a summons was issued to SECU in the instant case on June 6, 2024, ECF No. 6, SECU filed its Motion to Compel Arbitration and to Stay Case, ECF No. 8. Plaintiff filed a response in opposition to SECU's motion, ECF No. 10, and filed a Motion for Summary Judgment, ECF No. 11. Defendant filed a reply in support of the Motion to Compel Arbitration, ECF No. 14,

---

[2] SECU claims Plaintiff still owes it the entire amount of the judgment, as well as his credit card balance of $10,511.29. ECF No. 8-2, ¶¶ 18–19. Plaintiff disputes these claims in his Complaint, alleging that his accounts with SECU had inflated balances on his credit report. ECF No. 1, ¶ 8.

and a response in opposition to Plaintiff's Motion for Summary Judgment, ECF No. 17. In response to Defendant's reply in support of its Motion to Compel Arbitration, Plaintiff filed a Motion for Leave to File Surreply, ECF No. 18, which Defendant opposed, ECF No. 19.

## II.   MOTION FOR LEAVE TO FILE SURREPLY

Plaintiff contends that he should be granted permission to file a surreply on three grounds: (1) Defendant's reply in support of his Motion to Compel Arbitration raises new points regarding the conscionability of the arbitration agreement that require further clarification by Plaintiff; (2) Defendant's reply introduces new arguments and interpretations of case law that require further response from Plaintiff to demonstrate the "implications of Defendant's litigation strategy" to this Court; and (3) Defendant presents new facts regarding the alleged lack of prejudice to Plaintiff. ECF No. 18 at 2. Defendant's response in opposition to Plaintiff's surreply motion states that Defendant has not put forth any new factual or legal information but has rather emphasized information that was presented in its Motion to Compel Arbitration and in Plaintiff's response to that motion. ECF No. 19 at 1–2.

"Surreplies are highly disfavored in this District." *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015). Surreplies are not permitted unless so ordered by the court, pursuant to Local Rule 105.2(a), and should only be allowed when the "moving party would otherwise be unable to contest matters presented to the court for the first time in the opposing party's reply." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)); *see also Meyer v. DynCorp Int'l, LLC*, Civ. No. GJH-19-3412, 2020 WL 5513436, at *3 (D. Md. Sept. 14, 2020) (denying motion for leave to file surreply where the reply "did not raise new issues that could not have been anticipated beforehand, and instead merely provided additional legal authority

and development of its prior arguments[ ]"). "A party moving for leave to file a surreply must show a need for a surreply." *MTB Servs., Inc. v. Tuckman–Barbee Constr. Co.*, Civ. No. RDB-12–2109, 2013 WL 1224484, at *6 (D. Md. Mar. 26, 2013) (citing Local Rule 105.2(a)).

Courts have made exceptions to the policy disfavoring surreplies for self-represented plaintiffs, especially when the proposed surreply does not unduly prejudice the defendant. *See Boland v. Amazon.com Sales, Inc.*, 628 F. Supp. 3d 595, 599 (D. Md. 2022) ("Because [Plaintiff] is a pro se party and the arguments presented in his surreplies do not unduly prejudice [Defendant], the Court will grant [Plaintiff]'s Motions and, accordingly, will consider the arguments contained in his surreplies in its analysis . . ."). Although many of these exceptions have been granted in cases where the defendant has not opposed the surreply, which is not the case here, the filing of a surreply is ultimately within the discretion of the Court. *See Cordish Companies, Inc. v. Affiliated FM Ins. Co.*, 573 F. Supp. 3d 977, 988 (D. Md. 2021), *aff'd*, No. 21-2055, 2022 WL 1114373 (4th Cir. Apr. 14, 2022) ("The filing of a surreply 'is within the Court's discretion . . . but they are generally disfavored.'") (quoting *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015)).

Because Plaintiff in this case is self-represented, and because the Court discerns no prejudice to Defendant by allowing the proposed surreply, this Court will grant Plaintiff's motion for leave, ECF No. 18, and permit the proposed surreply to be docketed.

### III. MOTION TO COMPEL ARBITRATION

#### A. Standard of Review

The Federal Arbitration Act ("FAA") provides that, in any contract involving interstate commerce, a provision in which the parties agree to arbitrate their disputes shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract or as otherwise provided . . . ." 9 U.S.C. § 2. The FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614, 631 (1985)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."). "When the parties have agreed to an arbitration clause, . . . courts apply 'a presumption of arbitrability,' such that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Waterford Inv. Servs., Inc. v. Bosco*, 682 F.3d 348, 353 (4th Cir. 2012) (quoting *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432 (4th Cir. 2004)), and *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 572 (4th Cir. 1998) (holding that policy favoring arbitrability articulated in *AT & T Technologies* "is not limited to labor contracts"). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone*, 460 U.S. at 24–25.

The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 91 (2000). The party may show that the claims are unsuitable for arbitration by establishing that the agreement to arbitrate is invalid or otherwise does not cover the relevant claims.

"Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 501 (4th Cir. 2002). As such, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be

6

applied to invalidate arbitration agreements without contravening the [FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, state law defenses must not be applied "in a fashion that disfavors arbitration," and they must not "rely on the uniqueness of an agreement to arbitrate" as grounds for invalidating it. *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 341 (2011) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 (1987)).

    **B. Analysis**

In its Motion to Compel Arbitration, SECU seeks an order compelling Plaintiff to arbitrate his claims against it and staying this action. ECF No. 8 at 1. In opposition to SECU's motion, Plaintiff argues that the agreement to arbitrate is invalid, that SECU waived its right to arbitration, and that there is an enhanced need to adjudicate this suit via the judicial system because arbitration is improper for Plaintiff's claims. ECF No. 10. For the reasons explained below, the Court finds that there is a valid and enforceable arbitration agreement between the parties and that Plaintiff's claims fall within its scope. There is no evidence that the right to arbitrate has been waived, nor are there any public interest concerns that justify circumvention of the arbitration agreement. Accordingly, SECU's motion will be granted.

    **1. The Arbitration Agreement**

Plaintiff argues that the arbitration agreement is invalid because he did not intend to be bound by it, ECF No. 10 at 2; ECF No. 18-1 at 2; that the agreement is unconscionable, ECF No. 10 at 2; ECF No. 18-1 at 2; and that it is overly broad and should not cover FCRA claims, ECF No. 18-1 at 3–4. Defendant argues that the arbitration agreement is displayed conspicuously within the Membership Agreement, it is not unconscionable, and it is valid overall. ECF No. 14. The Court agrees with Defendant and finds that there is a valid and enforceable arbitration agreement between the parties.

      a.  **Validity of the Arbitration Agreement**

"Under Maryland law, to be binding and enforceable, an arbitration agreement must be a valid contract[ ]" and "must be supported by consideration." *Hill v. Peoplesoft USA, Inc.,* 412 F.3d 540, 543 (4th Cir. 2005) (citing *Cheek v. United Healthcare of Mid-Atl., Inc.,* 835 A.2d 656, 661 (Md. 2003)). "[T]he person asserting the contract's existence must demonstrate that the person alleged to be bound by the contract (1) had reasonable notice of an offer to enter into the contract and (2) manifested assent to it." *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 389 (4th Cir. 2024) (quotation marks omitted). Under Maryland law, manifestation of mutual assent to be bound by contract includes "(1) intent to be bound, and (2) definiteness of terms." *Brito v. Major Energy Elec. Servs., LLC,* 526 F. Supp. 3d 95, 112 (D. Md. 2021) (citing *Cochran v. Norkunas*, 919 A.2d. 700, 708 (Md. 2007)).

Here, the affidavit of Brent Shank, an assistant manager of Lending Operations at SECU, and other exhibits submitted by SECU establish that Plaintiff was provided SECU's Membership Agreement in connection with his application to open a membership account in November 2019. ECF No. 8-2, ¶¶ 6, 7; ECF No. 8-3; ECF No. 8-4 at 5–22. The Membership Agreement states Plaintiff's agreement to be bound by its terms and conditions. ECF No. 8-4 at 5.

Plaintiff does not dispute his assent to the Membership Agreement but disputes his assent specifically to the arbitration agreement contained therein. ECF No. 10 at 2. The Membership Agreement prominently indicates on its first page, in bolded all-capital letters, that it includes an arbitration agreement and that Plaintiff "may reject this arbitration agreement as specified herein." ECF No. 8-4 at 5 (all-caps removed). The arbitration provisions in the Membership Agreement display a prominent header in bolded, all-capital letters stating that Plaintiff "may opt-out of this

arbitration agreement" and directing the reader to the opt-out provision. ECF No. 8-4 at 13. The opt-out provision states:

> You have the right to opt-out of this Arbitration Agreement, provided that you notify us of your intent to opt-out within 60 days after we provide you this Arbitration Agreement. Your opt-out is only effective if you notify us in writing . . . within such 60 day time period. If you fail to opt-out within this 60 day time period, you will be deemed to have provided your consent to the resolution of your Claims through binding arbitration. In the event you opt-out of this Arbitration Agreement, such opt-out will not affect other terms and conditions of this Agreement.

*Id.* at 14. Further, the arbitration agreement provides that either Plaintiff or SECU "may elect to resolve a particular Claim through arbitration, even if one [party] has already initiated litigation related to the Claim . . . ." *Id.* at 13. A demand for arbitration may be made in writing, by initiating an arbitration proceeding, or by filing a motion to compel arbitration in court. *Id.*

The Court finds the parties' arbitration agreement to be valid. The provisions detailed above gave Plaintiff reasonable notice of the arbitration agreement and his opportunity to opt out of it. There is no evidence that Plaintiff ever notified SECU of his intent to opt out of the arbitration agreement at any point, and he does not claim that submitted any opt-out notice. In declining to opt out within the specified period, Plaintiff manifested his assent to the arbitration agreement.

The consideration requirement for a valid contract was also met by the parties' mutual right to elect arbitration. *See Bopda v. Comcast of the Dist., LLC*, Civ. No. PJM 22-2889, 2023 WL 6292767 (D. Md. Sept. 27, 2023), *aff'd*, No. 23-2148, 2024 WL 399081, at *2 (4th Cir. Feb. 2, 2024) ("A mutual promise to arbitrate constitutes sufficient consideration for an arbitration agreement.") (internal brackets omitted).

Plaintiff further argues that the provision subjecting "any disputes arising out of, affecting, or relating to [Plaintiff's] account or [Plaintiff's] relationship with [SECU]" to arbitration is overly broad and renders the arbitration agreement invalid. ECF No. 18-1 at 3–4. Courts have generally

9

found broad arbitration clauses to be enforceable. *See, e.g.*, Stone v. Wells Fargo Bank, N.A. 361 F.Supp.3d 539, 556 (D. Md. 2019) (stating that agreements compelling arbitration for any claims in relation to plaintiffs' accounts have been given a broad reading). Plaintiff cites no legal authority to support the proposition that the arbitration agreement at issue here is overly broad or that it does not meet the "definiteness of terms" requirement under Maryland contract law.

Moreover, Plaintiff's assent to the arbitration agreement is confirmed by his own demand for arbitration of a dispute with SECU before initiation of the state court matter. ECF No. 8-7; *see Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 630 (4th Cir. 2006) (the principle of equitable estoppel can prevent a party from asserting he did not know of or assent to an arbitration agreement when that same party has previously benefitted from the contract containing such agreement).

For the foregoing reasons, the Court finds the arbitration agreement between the parties to be valid.

### b. Unconscionability

An arbitration agreement must be both procedurally and substantively unconscionable for a court to decline enforcement. *Rankin v. Brinton Woods of Frankford, LLC*, 211 A.3d 645, 655 (Md. Ct. Spec. App. 2019) (citing *Doyle v. Fin. Am., LLC*, 918 A.2d 1266 (Md. Ct. Spec. App. 2007)).

> Procedural unconscionability "concerns the process of making a contract and includes such devices as the use of fine print and convoluted or unclear language, as well as deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms."
> \* \* \*
> Substantive unconscionability, on the other hand, "refers to contractual terms that are unreasonably or grossly favorable to the more powerful party and includes terms that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law[.]"

*Id.* at 655–56 (quoting *Stewart v. Stewart*, 76 A.3d 1221 (Md. Ct. Spec. App. 2013)).

Plaintiff argues the arbitration agreement at issue here is procedurally unconscionable because there is an imbalance of power between SECU and himself. ECF No. 10 at 2; ECF No. 18-1 at 2. He further asserts that the inconspicuous nature of the agreement and an inadequate opt-out mechanism contribute to its procedural unconscionability. ECF No. 10 at 2–3; ECF No. 18 at 2. Specifically, Plaintiff argues that the arbitration agreement was "buried within extensive documents" and was not highlighted in a manner that would "reasonably alert an average consumer." ECF No. 10 at 2; ECF No. 18-1 at 2.

The Court does not find the arbitration agreement to be procedurally unconscionable. Notice of the arbitration agreement and its opt-out provision is prominently displayed on the first page of the Membership Agreement, ECF No. 8-4 at 5, and the arbitration agreement itself is labeled with a conspicuous header that, again, provides notice of the opt-out provision, *id.* at 13. Each of these notices is displayed in bold and capitalized typeface. *Id.* at 5, 13. Courts in this District have generally accepted headers with bold and capitalized letters as sufficiently conspicuous. *See Brooks v. Prestige Fin. Servs., Inc.,* 827 F. Supp. 2d 509, 514 (D. Md. 2011) (stating "the provision uses bold and capitalized lettering and is conspicuous."); *Randolph v. RRR Bowie, LLC*, Civ. No. PX-22-2150, 2023 WL 7110516, at *4 (D. Md. Oct. 27, 2013). The parties' arbitration agreement is by no means buried in fine print, and although the terms of the arbitration agreement consume several paragraphs, the language is not unduly convoluted and only serves to clarify the terms.

Further, the Membership Agreement gave Plaintiff a 60-day opportunity to opt out of the arbitration agreement without requiring him to waive other terms of the Membership Agreement or forego an account with SECU. ECF No. 8-4 at 14. *See Johnson v. Opportunity Fin., LLC*, No.

11

3:22CV190, 2023 WL 2636712, at *10 (E.D. Va. Mar. 24, 2023) (contract of adhesion found not to be procedurally unconscionable when plaintiff had an opportunity to opt-out of arbitration provision). Plaintiff argues that the requirement to send a written opt-out notice to a specific address within this "strict" 60-day time frame is an onerous condition that supports a finding of procedural unconscionability. ECF No. 10 at 3. But similar and even stricter requirements have been found to be reasonable and not unconscionable by courts in this District. *See Guanyo Li v. StockX.com*, 349 F. Supp. 3d 517, 523–24 (D. Md. 2018) (finding an opt-out provision that requires a mailed written notice to a company's address within 30 days not to be unconscionable).

Plaintiff argues the arbitration agreement is substantively unconscionable because it restricts his statutory rights under the FCRA and broadly undermines the purpose of consumer protection laws. ECF No. 10 at 2. He also claims the agreement unreasonably favors SECU by allowing it to compel arbitration at its discretion. ECF No. 18-1 at 2–3.

The Court does not find the arbitration agreement to be substantively unconscionable. First, as discussed further below, the Court is not persuaded by Plaintiff's assertion that the arbitration of FCRA claims is a restriction of his substantive rights under consumer protection laws, and FCRA claims have been found to be arbitrable by federal courts. *See, e.g.*, Hearn v. Comcast Cable Commc'ns, LLC, 992 F.3d 1209, (11th Cir. 2021).

As to Plaintiff's second argument, the agreement in this case allows for *either* Plaintiff or SECU to elect to resolve disputes through arbitration. ECF No. 8-4 at 13. The agreement does not favor one party over the other. Plaintiff himself previously elected arbitration by serving a written

demand on SECU, although he later dismissed the arbitration proceeding. ECF No. 8-2, ¶¶ 17, 18; ECF No. 8-7 (Plaintiff's demand for arbitration against Defendant) at 4–12.

For the foregoing reasons, the Court does not find the arbitration agreement to be unconscionable.

### c. Suitability for Arbitration

Plaintiff argues that his FCRA claims are not suitable for arbitration. The U.S. Court of Appeals for the Fourth Circuit has held that "[c]laims asserted under federal statutes generally are arbitrable, so long as the wording of the arbitration agreement is sufficiently broad to encompass the statutory claim and Congress has not indicated its intent to prohibit arbitration of a given statutory claim." *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 282 (4th Cir. 2007). Here, the arbitration agreement expressly covers statutory claims. Claims subject to each party's right to arbitration include "any disputes arising out of, affecting, or relating to [Plaintiff's] account or [Plaintiff's] relationship with [SECU]." ECF No. 8-4 at 13.

Plaintiff argues that his FCRA claims implicate significant public interest concerns and that SECU's violations of the FCRA have caused him personal harm and violations of his rights under consumer protection laws. *See* ECF No. 10 at 4–5. He further argues that these damages and the consumer protective nature of the FCRA require judicial oversight of this Court to "ensure all claims and defenses are adjudicated comprehensively and fairly" and that the arbitration process is "not the appropriate forum for resolving these significant statutory violations." *Id.* at 5–6.

Plaintiff cites *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), in support of his argument his claims should not be subject to arbitration. ECF No. 10 at 3; ECF No. 18-1 at 6. However, the Court in *Mitsubishi* found "no warrant" in the FAA to imply "a presumption against arbitration of statutory claims." *Id.* at 625. "By agreeing to arbitrate a

13

statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Id.* at 628. Although the Court in *Mitsubishi* acknowledged that "not [all] controversies implicating statutory rights are suitable for arbitration," 472 U.S. at 627, Plaintiff provides no persuasive argument and cites no authority to suggest that his FCRA claims are unsuitable for arbitration. In *Mitsubishi*, the Court endorsed an assumption that "if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history." *Id.* at 628. Here, Plaintiff has cited no express provision in the FCRA and nothing it its legislative history to suggest that Congress deemed the rights it protects unfit for arbitration.

Several courts have found FCRA claims to be arbitrable. *See, e.g.*, *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, (11th Cir. 2021) (plaintiff's FCRA claims fell within the scope of the arbitration agreement because they related to the broader [agreement]); *Ball v. Citibank, N.A.*, 733 F. Supp. 3d 972, 981 (D. Nev., 2024) (finding arbitration agreement covered plaintiff's FCRA claim); *Greene v. Chase Manhattan Auto. Fin. Corp.*, No. CV 03-2179, 2003 WL 22872102, at *4 (E.D. La. Dec. 3, 2003) ("Although the Fifth Circuit has not addressed the issue directly, several district courts have held that FCRA claims are arbitrable and that nothing in the FCRA's statutory framework or legislative history precludes the application of the FAA to claims under the FCRA."). This Court finds no exception in the instant case.Plaintiff argues the adjudication of his claims in federal court is necessary to ensure a "comprehensive and fair adjudication." *See* ECF No. 10 at 5. However, as alluded to above, there has been no indication from this Court or others that arbitration is a less fair or comprehensive means of claim resolution.

*See Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 259 (D. Md. 2011) ("That an agreement restricts a party's access to a court does not make it unfair; the arbitration is not inferior to the courtroom."). The Fourth Circuit has held that "courts cannot treat arbitration in general as an inferior or less reliable means of vindicating important substantive rights." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502 (4th Cir. 2002) (citing *Mitsubishi,* 472 U.S. at 628).

The Court finds Plaintiff's claims in this litigation amenable to arbitration and does not find that arbitration of these claims would run counter to the public interest.

### d. Waiver of Right to Arbitration

Plaintiff argues that SECU waived its right to arbitration through its failure to object to this matter being brought in this Court. ECF No. 10 at 4. As noted above, the arbitration agreement at issue allows for either party to "elect to resolve a particular matter through arbitration, *even if one of [the parties] has already initiated litigation* related to the claim by: (a) making a written demand for arbitration upon the other party, (b) initiating arbitration against the other party, or (c) *filing a motion to compel arbitration in court*." ECF No. 8-4 at 13 (emphasis added). Defendant was served the Complaint in this matter on June 12, 2024, ECF No. 6, and filed a timely Motion to Compel Arbitration, ECF No. 8. Thus, SECU properly elected arbitration in compliance with the arbitration agreement.

Next, Plaintiff argues that SECU waived its right to arbitration by filing a prior suit against Plaintiff in state court to recover the unpaid loan and credit card balance. ECF No. 10 at 5. But, in the Fourth Circuit, a lawsuit can only constitute a waiver of a right to arbitration if the moving party that filed suit took some action that would result in "actual prejudice" to the opposing party. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 702 (4th Cir. 2012) ("Generally, a litigant defaults on its right to invoke the FAA where it so substantially utilizes the

litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.") (cleaned up). Two factors are considered to determine actual prejudice in this context: (1) the amount of delay before arbitration is sought and (2) the extent of the moving party's trial-oriented activity. *Id.* The parties agree that *Rota-McLarty* sets forth the applicable standard, but they dispute whether this standard is met in the instant case. *See* ECF No. 14 at 10; ECF No. 18-1 at 8.

Regarding the first *Rota-McLarty* factor, courts have held that a delay of several months, without more, is insufficient to demonstrate the opposing party suffered actual prejudice. *Rota-McLarty*, 700 F.3d at 703 (citing *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 (4th Cir. 2004); *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 982 (4th Cir. 1985); *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 343–44 (4th Cir. 2009); and *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 380 F.3d 200, 205 (4th Cir. 2004)). Plaintiff contends that there was a nine-month delay between his filing of the Complaint (in October 2023) and SECU's filing of its Motion to Compel Arbitration (in July 2024), and that this delay was a strategic choice to wait for a favorable judgment in state court.[3] ECF No. 18-1 at 9. But Defendant was not served the Complaint in this case until June 12, 2024, ECF No. 6—less than a month before it filed the Motion to Compel Arbitration, ECF No. 8. The Court does not find SECU's motion to have been so delayed as to prejudice Plaintiff. To the contrary, here, there was virtually no delay.

The second *Rota-McLarty* factor contemplates "the nature and extent of [a party]'s litigation activities." *Rota-McLarty*, 700 F.3d at 704. The question is whether the moving party has "so substantially utilize[d] the litigation machinery that to subsequently permit arbitration

---

[3] According to Plaintiff's surreply, the judgment against him in the state court matter was issued on or about May 3, 2024. ECF No. 18-1 at 9.

16

would prejudice the party opposing the stay." *Id.* Plaintiff argues that the prior state court suit, which was litigated from complaint to judgment, constitutes an engagement in trial-oriented activity by the SECU. ECF No. 18-1 at 9–10. But there has been little-to-no trial-oriented activity *in the instant case*.

In due consideration of the *Rota-McLarty* factors, the Court does not find that SECU has waived its right to arbitration. Because SECU invoked its right to arbitration in accordance with the terms of the arbitration agreement by filing a timely Motion to Compel Arbitration in this matter, the Court finds this right to be enforceable.

### 2. Compelling Arbitration

To prevail on a motion to compel arbitration under the FAA, the moving party must show "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect[,] or refusal of the [other party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *see also Wood v. Uber Technologies, Inc.*, Civ. No. TDC-23-2149, 2024 WL 69926, at *3 (D. Md. Jan. 5, 2024). All four *Whiteside* factors are satisfied in this case.

First, there is a clear dispute between the parties because Plaintiff alleges that SECU violated the FCRA and caused harm to Plaintiff's credit. *See* ECF No. 1, ¶¶ 8–15. Further, SECU seeks to compel arbitration, and Plaintiff opposes that request. ECF Nos. 10, 14, 18.

Second, the Membership Agreement includes a written arbitration agreement, ECF No. 8-4 at 13–14, which covers "any disputes arising out of, affecting, or relating to [Plaintiff's] account or [Plaintiff's] relationship with [SECU,]" to disputes based upon statutory rights. ECF No. 8-4 at 13.

Third, the transaction in this case implicates interstate commerce. "[T]he FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction." *Rosa-McClarty*, 700 F.3d at 697 (citation omitted). A "specific effect upon interstate commerce" need not be identified, "so long as 'in the aggregate[,] the economic activity in question would represent a general practice . . . subject to federal control.'" *Id.* at 697–98 (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003)). Mr. Shank represents in his affidavit that SECU engages in interstate commerce in "the making and servicing of its credit card and loan agreements," and that SECU has several customers outside of the state of Maryland, as well as more than 50,000 ATMs nationwide. ECF No. 8-2, ¶ 23. Plaintiff does not dispute that the transactions at issue in this litigation implicate interstate commerce.

Finally, Plaintiff has declined to arbitrate his claims by filing suit in this Court, ECF No. 1, and opposing SECU's Motion to Compel Arbitration, ECF No. 10.

Thus, the Court finds that SECU has satisfied its burden of showing that compelling arbitration is appropriate and necessary in this matter.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay the Case will be GRANTED, Plaintiff's Motion for Leave to File Surreply will be GRANTED, and Plaintiff's Motion for Summary Judgment will be DENIED as moot.

A separate Order will follow.

 3/25/25 
Date

_____
Matthew J. Maddox
United States District Judge